### J. H. CATON v. THE STATE.

No. 1756. Decided May 15, 1912.

**1.—Rape—Jury and Jury Law—Bill of Exceptions.**

Where, upon trial of rape, the appellant contended that he had not been allowed to sufficiently inquire into the qualifications of the special veniremen, and it appeared that the questions propounded to them were legitimate, yet the bill of exceptions did not recite or indicate what the jurors would have answered, the matter could not be reviewed on appeal.

**2.—Same—Qualification of Jurors.**

Where one of the jurors to whom objection was made had fully qualified himself to sit on defendant's case, and the other juror was excused, there was no error.

**3.—Same—Evidence—Insanity—Papers in Other Case.**

Where, upon trial of rape, the defendant sought to introduce the verdict of the jury and the charge of the court in a homicide case which had acquitted the main State's witness, to prove the issue of the insanity of the

said State's witness, there was no error in excluding this testimony, although defendant might have proved the fact that said witness pleaded insanity in the homicide case, to show that he was either incompetent to testify or that his credibility as a witness was impaired.

**4.—Same—Evidence—Physical Examination of Prosecutrix.**

Upon trial of rape, there was no error in admitting testimony as to a physician's examination of the prosecutrix within a few days after the alleged rape.

**5.—Same—Evidence—Recalling Witness.**

Where, upon trial of rape, the prosecutrix was used as a witness by the defendant and denied that she had had intercourse with defendant, and the State had to make out its case by other witnesses, there was no error in permitting the State to recall prosecutrix for the purpose of laying a predicate for the impeachment of her testimony by other statements which she had made, and this did not make her a State's witness.

**6.—Same—Sufficiency of the Evidence.**

Where, upon trial of rape, the evidence was sufficient to sustain the conviction, there was no error.

Appeal from the District Court of Karnes. Tried below before the Hon. John M. Green.

Appeal from a conviction of rape; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Williamson & Klingemann,* for appellant.—On question of challenge of jurors: Rothschild v. State, 7 Texas Crim. App., 519; Stagner v. State, 9 Texas Crim. App., 440; Black v. State, 42 Texas, 377.

On question of recalling prosecutrix: Vaden v. State, 25 S. W. Rep., 777; Shields v. State, 8 Texas Crim. App., 427; Estep v. State, 9 Texas Crim. App., 366.

On question of insufficiency of the evidence: Baldwin v. State, 15 Texas Crim. App., 275.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction was for rape on a girl under fifteen years of age, the evidence showing the girl was the stepdaughter of appellant. The jury awarded him five years in the penitentiary.

1. There were quite a number of bills of exception reserved to the rulings of the court on the empaneling of the jury. These various bills embody the same proposition. Another bill shows the same questions were asked of all the jurymen on the venire. It is shown by the language of the bills that after the jurors had answered all the questions from one to fourteen inclusive as set out in article 673 of the Code of Criminal Procedure, and in addition each of the veniremen stated that he could go into the jury box and try the case according to law given in charge by the court and the evidence of the witnesses

on the stand uninfluenced by any other consideration. They were then further asked by the defendant as follows:

"The court will charge you that the defendant in a criminal case is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt, if selected as a juror in this case, can you go into the jury box presuming the defendant to be innocent under the law and will you let that presumption remain with you throughout the trial of this case until his guilt is established by legal evidence beyond a reasonable doubt?"

"Suppose that when the case is finished you believe the defendant guilty, but judging from the evidence alone, there is a reasonable doubt in your mind as to the guilt or innocence, would you give the defendant the benefit of that doubt and acquit him?"

"The burden of proof is upon the State to prove the defendant guilty beyond a reasonable doubt, should it fail to do so, would you acquit him?"

"Suppose when the case is finished you believe the defendant guilty, but based upon the evidence alone, there is a reasonable doubt in your mind as to his guilt would you give the defendant the benefit of that doubt and acquit him?"

The district attorney objected to each question. The court sustained the objection, and the veniremen were not permitted to answer. In the bills he urges that he was not permitted, under the ruling of the court, to sufficiently inquire into the qualifications of the special veniremen so as to enable him or the court to determine whether or not said special veniremen were in fact qualified jurors, or to sufficiently inquire into their qualifications to intelligently select such jurors as would be satisfactory to the defendant, and to enable the defendant to exercise his peremptory challenges to the best advantage, and by reason of not being permitted to have the questions answered he was unable to test fully the veniremen's qualifications. We are of opinion that these were legitimate questions. The bill further recites that these questions were asked of each of the special veniremen, and that none of them were permitted to answer, and that out of said special venire the jury to try appellant was selected. The trouble with an intelligent solution of appellant's contention, however, arises from the fact that the bill does not recite or indicate what the jurors would have answered. If the answer had shown that they would have given appellant the benefit of the doubt on all the questions answered, then they would have clearly been proper jurors. If the answer had shown doubt as to the bias or prejudice or conclusion of the jurors, then they might not have been. The bill in this connection recites that all of the questions from one to fourteen inclusive of article 673 of White's Code of Criminal Procedure had been answered to the satisfaction of the court. These answers included the questions asked by appellant in a general way. Taking the answers to the court, the jurors would have been fair and would have been governed by the law and the testimony. In order to

get away from this position of the jurors as manifested in the bill, the bill ought to have recited what were the expected answers so this court might know whether the answers to the court were correct. As the record shows this matter we are of opinion we can not revise it.

2. There are two bills of exception reserved to the ruling of the court in regard to two other jurors. One of them, under the bill, seems to have fully qualified himself under the decisions of this court. In regard to the other juror, there may have been some doubt, but he was excused and did not sit on the jury.

3. Another bill recites the fact that appellant sought to introduce before the jury the charge of the court in a homicide case against the State's main witness, which had been previously tried in DeWitt County. This witness furnished practically the testimony upon which the State obtained this conviction. The name of this witness was Terrill Woods. The charge sought to be introduced, among other things, submitted the issue of insanity to the jury in the trial of said Woods on his case for homicide. Appellant also sought to introduce the verdict of the jury in the homicide case which found Woods not guilty. We are of opinion this evidence was not admissible. If insanity in that case was an issue, that fact might be shown along with other facts to show Woods was of such unsound mind as to render him incompetent to testify, or, if not, then, for the purpose of impairing his credibility or reliability as a witness. The fact that the issue of insanity in the homicide case was submitted by the court on the trial of Woods was sought evidently to be used in connection with other testimony introduced by the defendant to show that Woods, if not insane, was in such condition that his testimony ought not to be relied upon for the purpose of convicting a man for an infamous crime. Woods was an epileptic and has been for several years. Of this there was no question. The proper authorities in Karnes County had declared him so to be, and the Commissioners' Court of that county had continually made an allowance of a certain amount for his maintenance. The charge above referred to was sought to be introduced along with this general line of testimony. That the defendant might have proved the fact that Woods plead insanity in the homicide case could have been introduced before the jury for what it was worth, but we are of opinion the charge of the court to a jury in another case would not be legitimate evidence in that connection.

4. Another bill of exceptions recites that one of the physicians made a digital examination of the girl alleged to have been raped, but the time he made it was not definite in his own mind. He stated it was about six months before this trial, and at the request of the grand jury. Taking the recitation of the facts in the bill, we are of opinion this evidence was properly admitted. The rape is alleged to have occurred, and the facts show if it occurred at all, on March 29. The indictment was returned the 3d of April. It seems that while the grand jury was investigating the case, which was between the 29th of March and 3d of April, they requested the physician to make this examination.

He did so. The result of this examination shows the girl's private parts had been penetrated frequently, but he saw no evidence of recent penetration. In fact, his testimony shows that she had been in the habit of either having intercourse with the opposite sex, or her private parts were enlarged from self-abuse. The opinions of the doctors, however, not only this one, but others, indicate that it was not from self-abuse. This testimony, we think, was admissible.

5. Another bill recites that objection was interposed to the recall of the assaulted girl Allie David by the State for the purpose of laying a predicate for impeachment. This case presents rather a peculiar condition in this respect. Terrill Woods was the State's witness who testified that he saw appellant and his stepdaughter, Allie David, in the act of intercourse, and it was upon his testimony that the conviction was obtained, corroborated by the examination of the girl by the physician, which was of very slight importance. The girl, Allie David, was used as a witness by the defendant and she testified positively and strongly to the fact that she had never had intercourse with appellant, and that the occurrence of which Terrill Woods testified did not in fact occur; that she was not at the time and place Terrill Woods mentioned, and had never at any time had intercourse with appellant. After she had testified, and about the close of the case, the State recalled her for the purpose of laying a predicate for contradicting her as to some previous statements she had made. Those statements were in conflict with her testimony on the trial of the case. The contention of appellant is that by recalling her the State made her a State's witness. We do not understand this to be correct. She was an adverse witness to the State and very decidedly so. The State had the right to contradict her as an adverse witness. It was also shown in the bill that the State's counsel had ascertained these matters, after the girl had testified, and, therefore, she was recalled to lay the predicate. Be that as it may, we are of opinion appellant's contention is not sound. That the State made her a State witness in recalling her for the purpose of laying the predicate to impeach under the circumstances detailed, is not correct or tenable under the facts stated.

6. It is also urged that the evidence is not sufficient to support the finding of the jury. While the writer would be inclined to agree with this contention, yet the jury believed the evidence. We would hardly feel justified in reversing the judgment for this cause under this condition of the record. I do not care to review the facts.

As the record is presented to us the errors suggested are not thought to be reversible, and the judgment is ordered to be affirmed.

*Affirmed.*